**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MATTHEW FORBES,<br><br>Plaintiff,<br><br>v.<br><br>BOROUGH OF INDIANA, JOSHUA HENNING, *and* SCOTT SCHULLER,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 20-cv-1515<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 54 |

**OPINION**

**KELLY, Magistrate Judge**

Plaintiff Matthew Forbes ("Forbes") initiated this civil rights action against the Borough of Indiana ("Borough") and two of its police officers, Joshua Henning ("Henning") and Scott Schuller ("Schuller") (collectively, "Defendants"). Forbes alleges that during his arrest for shoplifting a bag of beef jerky, Henning and Schuller committed assault and battery and used excessive force in violation of the Fourth Amendment to the United States Constitution.

Pending before the Court is a Motion for Summary Judgment filed by Defendants with respect to Count I (Fourth Amendment Excessive Force against Henning and Schuller); Count III (Assault and Battery against Henning and Schuller) and Count IV (Monell Municipal Liability claims against the Borough). For the following reasons, the Motion for Summary Judgment is granted as to the Borough but is denied as to Henning and Schuller.[1]

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case. ECF Nos. 10, 11, and 12.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 2018, Forbes was a college student in Johnstown, Pennsylvania. Along with his roommate A'jai Washington, and teammate Desmond Jones, Forbes attended a Halloween party in Indiana Borough, Pennsylvania. ECF No. 60-2 at 13-14, 24. After leaving the party, the trio stopped at a convenience store to get some food. Id. at 27. Forbes and Washington ordered sandwiches, which Forbes paid for. After paying for the food, Forbes grabbed a small bag of beef jerky. He admits he was being "stupid", and put the beef jerky in the same bag as the paid items. He eventually left the store without paying for the beef jerky. Id. at 30-34. Washington also took a Gatorade and a bag of Doritos and failed to pay for them. A store security officer reported the theft to Borough police. ECF No. 60 ¶ 3.

A short time later, two Borough police officers arrived and waited with store security for the young men to exit the building. Three more officers arrived minutes later. The events that followed were captured on a store security camera and by Jones on his cellphone. ECF Nos. 53-3 and 53-4 (videos). The video shows the three young men were stopped by two officers and store security as they exited. While being questioned, Forbes stood with his back against the store's brick and glass wall, next to a large garbage receptacle. Forbes states (and Defendants do not refute) that he admitted to the theft and offered to pay for the items. He remained calm, as did his companions. The officers spoke to each of the men for a few minutes. Forbes and Washington provided identification and, according to Forbes, he and Washington were told they would receive a citation in the mail for their misconduct. ECF No. 60-2 at 33, 38-39. After more discussion, Forbes says Jones challenged the need for his identification since he did not take anything. An officer told Jones to leave. Id. at 39; ECF No. 53-3. At that point, Henning announced that Forbes and Washington were being placed under arrest. ECF No. 60-2 at 40. The video shows that as

Henning reached for Forbes' left arm, Forbes stepped back against the wall and moved his arm behind his back to avoid being grabbed. At that point, Henning shoved Forbes back into the wall, and three officers converged, all pushing Forbes into the wall and appearing to strike him while banging his head and body into the wall. ECF No. 53-3; ECF No. 60-2 at 47. Jones recorded a short clip of the incident that depicts Schuller grabbing Forbes from behind around the neck to place him in a headlock, and then bending him over at the waist. ECF No. 53-4. The parties agree that Schuller grabbed him "[a]fter Plaintiff (sic) arms were secured." ECF No. 60 ¶ 13.

During the melee, Forbes does not appear to be combative or belligerent. He was placed in handcuffs and led to a waiting police car by two officers. Forbes states that his questions related to the use of force were unanswered and that he was thrown into the police car. ECF No. 60-2 at 49-50.

Forbes was charged with the misdemeanor and summary offenses of Resisting Arrest, 18 Pa. C.S. § 5104, Retail Theft, 18 Pa. C.S. § 3929, and underage consumption of alcohol, 18 Pa. C.S. § 6308. ECF No. 52 ¶ 8. After processing at the Borough police station, Forbes and Washington were released from custody. ECF No. 60-1 ¶ 15. Forbes strenuously disputes that he resisted arrest. That said, "Plaintiff accepted responsibility for his conduct on October 28, 2018, when he agreed to participate in the Accelerated Rehabilitative Disposition (ARD) Program in Indiana County, Pennsylvania." ECF No. 52 ¶ 18. There is no dispute that Forbes has completed ARD, and the charges have been expunged. ECF No. 60-2 at 9-10, 82-86.

Forbes' medical records show that he went to the hospital emergency room following the incident with complaints of neck pain from hyperextension and right ankle pain. X-rays of his ankle and CT scan of his neck were normal, and he was released with a cervical collar and a

diagnosis of the muscle, fascia, and tendon strain of the neck. He was also provided an air boot for ankle and joint pain. ECF No. 60-3 at 2.

On October 7, 2020, Forbes commenced this suit against the Borough, Henning, and three John Doe police officers, and alleged that his injuries were sustained as the result of the use of excessive force in violation of the Fourth Amendment. ECF No. 1. Forbes also asserted claims for assault and battery against all four officers and a municipal liability claim against the Borough. After initial disclosures between the parties, Forbes requested and was granted leave to file an Amended Complaint to properly identify the John Doe Defendants. ECF Nos. 25, 26. Leave to file a Second Amended Complaint was granted to correct errors in Defendants' communication of the identity of the John Doe Defendants. ECF Nos. 29, 30. The Second Amended Complaint is the operative Complaint. ECF No. 31.

Upon the completion of discovery, the Court granted Forbes' motion to voluntarily dismiss two of the newly named Defendants. ECF Nos. 43, 45. Defendants then filed their expert report regarding the propriety of the use of force in the incident and the training and supervision of police officers by Defendant Borough of Indiana, ECF No. 49.

In accordance with the Court's scheduling order, the parties filed their Joint Statement of Undisputed Facts, ECF No. 52, and Defendants timely filed the pending Motion for Summary Judgment, brief, and appendix in support of the motion. ECF Nos. 53-55, 60. Forbes has filed his brief in opposition. ECF No. 59. The Motion for Summary Judgment is now ripe for consideration.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material

fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating to the Court that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted).

## III. DISCUSSION

### A. Fourth Amendment Excessive Force Claims

Defendants assert that they are entitled to the entry of summary judgment in their favor as to Plaintiff's claims under 42 U.S.C. § 1983 because (1) Forbes did not suffer a constitutional violation, and (2) Defendant police officers are entitled to qualified immunity.

"Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007). At the summary judgment stage of the proceedings, the Court must determine "(1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that it would [have been] clear to a reasonable officer that his conduct was unlawful." El v. City of Pittsburgh, 975 F.3d 327, 334 (3d Cir. 2020) (internal quotation marks omitted) (quoting and citing Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011); Saucier v. Katz 533 U.S. 194, 202 (2001), *overruled on other grounds by* Pearson v. Callahan, 555 U.S. 223 (2009). The Court may address the steps in either order. Id.

**1. Violation of constitutional right**

Defendants contend that neither officer violated Forbes' Fourth Amendment right to be free from unreasonable force because (1) the use of force was justified, and (2) the force used was reasonable. ECF No. 55 at 2. Defendants cite as dispositive the video evidence, Forbes' ARD for shoplifting and resisting arrest, and his testimony "that when Officer Henning reached for him, as a 'reflex' he slid back and when Officer Henning reached for his hand, he turned his hand and began backing up." Id. (internal citations omitted).

Forbes responds that the video evidence, including bystander video evidence, plainly refutes Defendants' assertion that the force used was reasonable. Forbes disputes Defendants' allegation that he resisted arrest and responds that under applicable controlling precedent, a charge or conviction for resisting arrest does not end the inquiry into whether the force used was unreasonable. Thus, neither the ARD disposition nor his concession that he backed into the wall or reflexively moved his hand warrants the entry of judgment in Defendants' favor. ECF No. 59 at 6 (citing Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997)). Moreover, summary

judgment is not appropriate because the evidence raises multiple issues of fact related to whether the force used was reasonable under the circumstances. The Court agrees.

In El v. City of Pittsburgh, the United States Court of Appeals for the Third Circuit summarized the evidence necessary to establish a claim for the violation of the Fourth Amendment.

> "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." Lamont, 637 F.3d at 182-83. "A seizure occurs '[w]henever an officer restrains the freedom of a person to walk away.'" [Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004)] (alteration in original) (quoting Tennessee v. Garner, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985))….
>
> When determining the reasonableness of an allegedly excessive use of force, "the standard is whether the police officer's 'actions [were] objectively reasonable in light of the facts and circumstances' ..., regardless of the officer's intent or motivation." Id. (first alteration in original) (quoting Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). We consider factors including "the severity of the crime at issue, whether the suspect[s] pose[ ] an immediate threat to the safety of the officers or others, and whether [they are] actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S.Ct. 1865. We also assess the physical injury to the plaintiff, "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by* Curley, 499 F.3d at 209-11.

El v. City of Pittsburgh, 975 F.3d at 336.

The El case involved two teenagers who sued for excessive use of force during an investigatory stop by police for suspicion of drug possession and, finding none, for suspicion of underage purchase of tobacco. While seated on steps in front of a store, the teens complained they were being harassed.

> Will testified that in response to his comment about being harassed, Officer Welling said, "[D]o you want to know what it feels like to be harassed?" Id. Will stood up to, as he testified, "make sure the lieutenant heard what [Officer Welling] said to me." JA360. The video shows Will talking to Officer Welling as each of the men

> gestured with a pointed forefinger. The events that happened next cascaded quickly and were over in about ten seconds.
>
> Will "took one or two small steps in the direction of Lieutenant Kacsuta and Officer Warnock." El, 2018 WL 3707420, at *4. Officer Welling then "grabbed Will ... by his wrist and neck and slammed him back into the wall of the vacant storefront ... and on to the pavement." Id. Beyshaud, who had still been sitting on the stoop, "immediately stood up, turned towards Officer Welling, and attempted to punch [him] and otherwise defend his brother." Id. Officer Warnock reacted to Beyshaud's swing by "deploy[ing] his taser into Beyshaud['s] side ..., causing Beyshaud ... to fall to the ground." Id.
>
> When the dust settled, both brothers were lying on the ground. They did not resist as six officers handcuffed and arrested them. Beyshaud was taken to the hospital and then to jail. Will went directly to jail and, after he was released, visited the hospital emergency department for lower back pain. He was told he had a contusion on his hip.

Id. at 327. Under applicable law, the Third Circuit affirmed the denial of summary judgment because "taking the facts in the light most favorable to Will, a jury could conclude there was a violation of his right to be free from the unreasonable use of force." Id. at 337.

> Under the Graham factors, the potential crime at issue (underage purchase of tobacco) was not severe; the Els did not pose an immediate safety threat; and they were neither resisting arrest nor trying to flee. See 490 U.S. at 396, 109 S.Ct. 1865. Under the Sharrar factors, the Els were not violent or dangerous; they were unarmed; they were outnumbered six to two; and the situation unfolded over a few minutes, not a few tense and dangerous seconds. See 128 F.3d at 822. The final Sharrar factor, physical injury to the plaintiff, weighs in Will's favor, because he sustained a hip contusion—although the injury is relatively minor. See id.

Id. at 337–38. The Circuit also viewed the video evidence of the incident and found that with respect to the use of force, the trial court's factual determinations that Will was non-threatening was not blatantly contradicted by the video, and therefore not subject to review.

Here, the evidence construed in the light most favorable to Forbes as the nonmoving party reflects events strikingly similar to those in El, with the Graham and Sharrar factors pointing to disputed issues of fact that weigh in Forbes' favor. That said, in weighing the evidence, "the right

to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," Graham, 490 U.S. at 396, and Defendants are entitled to summary judgment if their use of force was objectively reasonable as a matter of law. See Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004).

As an initial matter, Defendants' reliance on the video evidence as dispositive under Scott v. Harris, 550 U.S. 372, 378 (2007) is misplaced. In Scott, the United States Supreme Court held that in qualified immunity cases at the summary judgment stage, the Court generally adopts "the plaintiff's version of the facts, unless 'no reasonable jury could believe it.' But the existence of a security video presents an 'added wrinkle.' In cases where there is a reliable video depicting the events in question, courts must not adopt a version of the facts that is 'blatantly contradicted' by the video footage." Jacobs v. Cumberland Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (quoting Scott, 550 U.S. at 378, 380) (internal citations omitted).

In this case, as in El, the video evidence does not refute the non-movant's version of events regarding the events leading up to and including the use of force and therefore the video is not accorded the dispositive weight urged by Defendants. The video presented by Defendants shows five police officers responded to the call. After being stopped when leaving the convenience store, Forbes stood calmy for several minutes next to a garbage can, leaning on a brick wall, and surrounded by four police officers, including Henning and Schuller. Forbes did not pose a risk of flight or behave in a belligerent or threatening manner, and he cooperated with the request for identification. The crime at issue, shoplifting a small bag of beef jerky, is minor, and Forbes was not armed. One of his two companions was instructed to leave, and the other was handcuffed without incident. Thus, the situation did not present an urgent risk of danger to police or bystanders

and there is no evidence of immediate tension or danger that required the abrupt and overwhelming use of force.

Upon being told he would be arrested, Forbes remained against the wall, and slowly moved his hand to avoid Henning's reach. At that point, he was rushed by all four officers, including Henning and Schuller, who appear to slam Forbes into the wall and garbage can, and strike him. The bystander video shows Schuller grabbed Forbes forcefully by the neck from behind, despite at least two officers holding him in a secured position. Forbes was handcuffed and walked to a patrol car without resistance. The evidence, including medical records, reflects that Forbes sustained an acute strain injury to his neck and an injury to this foot. In sum, taking the video and medical evidence presented in the light most favorable to Forbes, a reasonable jury could conclude that the Graham and Sharrar factors weigh in his favor and Defendants Henning and Schuller violated his right to be free from the unreasonable use of force.

The Court is not persuaded by Defendants' alternative reliance on Forbes' arrest and ARD proceedings for resisting arrest. In El, the Third Circuit reaffirmed its holding in Nelson that "even if an individual is engaged in disorderly conduct, there still could be a level of responsive force that is reasonable and a level that is 'excessive and unreasonable.' Viewing the facts in the light most favorable to [plaintiff], a jury could conclude that [the officer's] use of force was objectively unreasonable, even taking [plaintiff's] disorderly conduct into account." El, 975 F.3d at 339 (quoting Nelson, 109 F.3d at 145). Here, Forbes' hand movement and arrest for disorderly conduct may present cogent arguments against liability at trial. However, the evidence of the minor crime at issue, Forbes conduct up to the point of physical contact, and the conduct of Henning slamming Forbes into a wall and Schuller grabbing him from behind by the neck, is sufficient to permit a reasonable jury to find that Defendants violated Forbes' Fourth Amendment rights.

Accordingly, after a thorough review of the record, the Court finds disputed issues of fact as to Henning and Schuller's use of force against Forbes and whether the use of force was excessive under the circumstances. These are questions of fact not appropriate for resolution through summary judgment.

**2. Was right clearly established?**

Defendants contend that even if their conduct exceeded the limits of permissive force, qualified immunity bars imposing liability because there is "no legal authority that would have informed Officers Henning and Schuller that their conduct in this situation was unlawful." ECF No. 55 at 13. This prong of the qualified immunity analysis is resolved in Forbes' favor. In El, the Third Circuit explained,

> Plaintiffs may show that a right is clearly established by "point[ing] either to 'cases of controlling authority in their jurisdiction at the time of the incident' or to 'a consensus of cases of persuasive authority.'" al-Kidd, 563 U.S. at 746, 131 S.Ct. 2074 (Kennedy, J., concurring) (quoting Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). In the absence of controlling authority from the Supreme Court or this Court, the District Court correctly looked to excessive force cases from our sister Circuits that involve police use of non-deadly force on unarmed, uncooperative citizens who were not suspected of serious crimes. El, 2018 WL 3707420, at *11. These cases establish a consensus that such an individual has the right not to be taken to the ground during an investigatory stop when he stands up and takes one or two small steps towards a police officer who is standing a few feet away.

El, at 339. Thus, since at least 2013, there has been a "'consensus ... of persuasive authority,' that an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." Id. at 340 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011) and quoting Wilson v. Layne, 526 U.S. at 617).

Here, as in El, viewing the facts in the light most favorable to Forbes, "the danger to the police and the community was virtually nil." Id. at 342. Forbes testified that after being told he

would receive a citation in the mail for a summary offense, he was surprised by the announcement he was being taken to jail and so flinched and leaned back into the wall. The video evidence shows he was outnumbered four to one. And while Forbes concedes he moved his hand, the video shows he did not actively resist arrest by striking out or trying to flee. Under these circumstances, the consensus in the law for some time prior to the incident at issue supports Forbes' claim that slamming him into a wall, striking him, and grabbing him by the neck after he was secured was an unreasonable use of force. Thus, Defendants are not entitled to summary judgment based on qualified immunity.

**B. Assault and Battery**

Under Pennsylvania law, "[a] police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive[.]" Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). Defendants argue that Forbes' assault and battery claims must fail because their conduct is reasonable and therefore privileged. ECF No. 55 at 14.

The standard for determining assault and battery is analogous to the standard used for excessive force under the Fourth Amendment. Accordingly, for the same reasons that the Court denies Defendants' motion for summary judgment as to Forbes' Fourth Amendment excessive force claims, Defendants' motion for summary judgment on Plaintiffs' assault and battery is denied. See Renk, 641 A.2d at 293.

**C. Monell claims**

Defendants argue, and Forbes agrees, that pursuant to Monell v. Dep't of Social Services, 436 U.S. 658 (1978) and cases applying it, summary judgment should be granted with respect to all claims that the Borough violated Forbes' civil rights through an unlawful practice or policy or

the failure to train or supervise its employees. Accordingly, the Motion for Summary Judgment is granted as to all claims asserted against the Borough.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is properly granted as to the Borough and denied as to Defendants Henning and Schuller. An appropriate Order follows.

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: October 12, 2022

cc: All counsel of record by Notice of Electronic Filing